## BILLINGHURST V. SPINK COUNTY *et al.*

1.    Rule 13 of this court in effect, provides that respondent may bring al-
leged defects or imperfections in appellant's abstract to the attention
of this court by serving and submitting a further or additional abstract
and unless the method therein provided is pursued, and such
an abstract is provided which denies the correctness of the abstract
filed by appellant, the latter must be taken as true; and an affidavit
denying service of the notice of appeal, submitted with a motion to dis-
miss, cannot be considered, but the question must be decided upon the
record properly before us.

2.    One who owns personal property in this state, subject to taxation, that
has not been assessed, is charged with a knowledge ot the statute
which requires the board of equalization, at its annual meeting, and at
the time and place fixed by law, to place such omitted property upon
the assessment roll, and enter therefor a reasonable, just and uniform
taxation; and he is also presumed to know that such statute provides
that he may apply to such board in person, or by his agent or attorney,
at any time during its session, for a correction of any alleged errors in
the listing or valuation of his property, and in such cases a notice to
such owner is not necessary.

3.    A nonresident who sends money into this state, and surrenders its pos-
session and control to agents fully authorized to loan, invest and man-
age the same thereby subjects such property to the jurisdiction of this
state for the purposes of taxation; and the legal fiction that the situs
of such property is at the domicile of the owner yields to the require-
ments of justice, and the actual situs is the place where the property is

actually situated and employed in business, and where such agent resides.

Avant v. Flynn, (S. D.) 49 N. W. 15, distinguished.

(Syllabus by the court.    Opinion filed March 3, 1894.)

Appeal from circuit court, Spink county. Hon. A. W. CAMPBELL, Judge.

Action by Hannah Billinghurst against the county of Spink and W. C. Kiser, county treasurer, for an injunction. There was a decree for plaintiff, and defendants appeal. Modified .and affirmed.

The facts are fully stated in the opinion.

*E. B. Korns, States Attorney Spink County,* and *Sterling & Morris,* for appellant.

The plaintiff kept her money within the state in the hands of agents for, and as a regularly continued investment. For the purpose of business and profit she gave it a situs different from her actual residence, and it is taxable where actually situated, the same as other personal property. Hutchinson v. Board of Equalization of the City of Oskaloosa, 23 N. W. 249; Jefferson's Executors v. Washington Co., 28 N. W. 256; Desty on Taxation, Vol. 1, p. 324; The People v. Niles, 35 Cal. 282.

In the law conferring upon the board of equalization authority to place upon and add to the assessment roll any property subject to taxation which has been omitted therefrom by the owner, or by the assessor, and enter for the same a reasonable, just and uniform taxation, it is nowhere provided that notice shall be given to the owner of such omitted property. Notice of listing is not required. The effect of the conclusion of the court therefore, that the action of the board of equalization in placing said assessment on the roll was irregular and illegal because the plaintiff had no notice of the assessment is that this law is unconstitutional. A person owning property within the county, subject to taxation, should be held to know whether in fact he has been assessed or not; if assessed, the knowledge that he is requires him to appear before the board for the cor-

rection of any alleged error; if not assessed, the knowledge that he is not requires him to appear at the time the board shall assess, and there be heard against the wrong or unjust listing and assessment. Nugent v. Bates, 50 N. W. 76; Savings Bank v. Jordan, Sheriff, 17 Pac. 621.

No mere irregularities in the assessment, levy or attempted collection of taxes is ground for interference by injunction; it must appear that the grounds for such relief come under some recognized head of equity jurisdiction. En. & Am. Enc. Vol. 10, p. 857; Hannewinkle v. Georgetown, 15 Wall. 547; Taylor v. Secor, 2 Otto, 575; Frost v. Flick, 1 Dak. 132.

*Howard & Walsh,* for respondent.

Simply having money in the hands of an agent for the purpose of investing it in mortgages, does not give the personal property a situs sufficient for taxation where the owner is a nonresident of the state. 1st Desty on Tax. p. 324; Harron v. Keeran, 26 Am. Rep. p. 88. The money must be in business here, and the mortgages must be kept here. If the statute authorizing the board of equalization to place omitted property on the tax roll was intended to permit the board to so place property thereon without notice then the statute is unconstitutional. Const, of S. D., Sec 2, Art. 6; Stewart v. Palmer, 7 N. Y. 184; Hutson v. Woolbridge, 16 Pac. 49; 1st Desty on Taxation, p. 697; The Ry. Tax Cases, 13 Fed. 765; 18 Fed. 453. Respondent was not bound at her peril to attend every meeting of the board from July to August to protect her rights. Avant v. Flynn, 49 N. W. 15. It is not enough to say that the statute does not in terms require the notice to be given; the injustice of the act counterbalances the inconvenience of the officers in giving the notice. Patten v. Green, 13 Cal. 325; State v. Lindell, 9 Mo. App. 455.

FULLER, J. The object of this suit is to enjoin the collection of an alleged personal tax of $1,300 placed upon the assessment roll by a county board of equalization, and to re-

strain a sale of certain real estate for such tax, owned by plaintiff, and situated in the county of Spink and state of South Dakota. There was a decree for plaintiff, and the defendants appeal.

Plaintiff's counsel moved to dismiss the appeal because the notice of appeal was not served on the plaintiff, and for that reason this court never acquired jurisdiction. To this preliminary question we will first direct our attention. The printed abstract, at page 10, contains the following: ''That thereafter, on the —— day of December, 1892, the defendants perfected an appeal to the supreme court of the state of South Dakota, by serving upon the plaintiff and the clerk of the circuit court in and for said county of Spink a notice of appeal.'' Rule 13 of this court provides ample means by which alleged errors or imperfections in appellart's abstract may be remedied and brought to the attention of this court, and unless the methods therein specified are pursued, and an additional or supplemental abstract is provided by respondt nt, in accordance with such rule, which denies the correctness of the abstract filed by appellant, the latter must be taken as true. Irrigation Co. v. Schone, (S. D.) 50 N. W. 356; Noyes v. Lane, (S. D.) 48 N. W. 322. The abstract which our rules require is designed to take the place of the record for the purposes of the argument and decision of the case to which it relates; and when such an abstract has been prepared by an appellant, and filed in this court, in accordance with such rules, and recites, in substance, that defendant's perfected an appeal to this court by serving upon the plaib tiff and the clerk of the circuit court of the county in which the case was tried a notice of appeal, such recital will be accepted by this court as true, unless it be denied by an amended or supplemental abstract Gates v. Brooks, 59 Iowa, 510, 6 N. W. 595, and 13 N. W. 640; Hardy v. Moore, 62 Iowa, 65, 17 N. W. 200; Farmer v. Sassen, 63 Iowa, 110, 18 N. W. 714. An affidavit denying service of the notice of appeal upon plaintiff, submitted with a motion to dismiss, cannot be

considered.  This  question  must  be decided upon the record, and the motion to dismiss the appeal is therefore denied.

Concerning  the  facts  upon  which  this  appeal  depends, there is but little contention; and, as the evidence is not before us, we must conclude that the facts found by the court are sustained by the evidence.   From the material and uncontroverted allegations  of  the  complaint  we  obtain  the  following facts: Plaintiff, at all times hereinafter mentioned, and for more than twenty years prior thereto, has been a  resident and citizen of the state of Wisconsin, and has  never  resided in  the territory of Dakota, nor in the state of South  Dakota.   That she is the owner  of  certain  lands  situated  in  Spink county, S. D., and that the defendant W. C. Kiser,  as  treasurer  of  said  county, has advertised and intends to  sell  said  real  estate  on the 3rd day of November, 1890, for alleged  delinquent  personal taxes, amounting to $1,300.   That upon the assessment rolls returned by the various assessors of Spink county for the  year 1887 the name of the plaintiff did  not  appear  upon the list of personal property,  and no personal  property was  therein listed as the property of  the  plaintiff.   It appears that the board of equalization acted upon the theory that the firm of Billinghurst Bros., as agents of the plaintiff, had in their possession or under their control,  within  the  said  county  of Spink, on the first day of April, 1887, certain money, notes, and mortgages belonging  to the plaintiff, and that said agents of the plaintiff were engaged in  a  general  banking  business  on  their own  account, and in loaning and collecting plaintiff's money.   There  seems  to be some dispute about the amount of said  money  and bills receivable, and the aggregate value thereof; but  the board of equalization, on the 11th day of August, 1887, without notice to plaintiff, valued and assessed the same at $18,000,  and caused  such amount to be placed upon and added to  the assessment roll, as the personal property of  plaintiff  subject to taxation in Spink county for the year 1887; that plaintiff  has  not  paid the same, or any part thereof, which, with  interest  and  penalty,  accord-

ing to such assessment, amounts to $1,300. Upon these undisputed facts, and the evidence offered upon the trial, the court based the following findings of fact and conclusions of law, and entered judgment accordingly:

Findings of fact: (1) That the plaintiff, at the time of the assessment complained of, was the owner of the N. E. ¼ of section 6, township 119, range 61 W., and the N. E. ¼ of section 32, township 119, range 61, and the S. E. ¼ section 7, township 118, range 63, all in said Spink county. (2) That there were no real estate taxes due on said land at the time of the acts of the board of county commissioners hereinafter referred to. (3) That the plaintiff is, and was at all times hereinafter referred to, a nonresident of this state, but had sums of money at and prior to the 11th day of August, 1887, and on the 1st day of April of said year, in the hands of her sons, C. B. Billinghurst and W. S. Billinghurst, doing business as the Billinghurst Bros., at Ashton, in said county, for investment, or actually invested, in notes and mortgages on property in said county, and that her said sons were acting as her agents in loaning and investing the same, said sum amounting to $6,000. (4) That no assessment of said property, or of any personal property of the plaintiff, was made by the assessor of said county during the year 1887, and the assessment roll for said county for said year was returned to the county auditor, showing no assessment against the plaintiff for personal property of any kind; but said C. B. Billinghurst, for said Billinghurst Bros., returned under oath, that said Billinghurst Bros. had no other property belonging to them, or by law required to be listed by them for the year 1887, as agents or otherwise, for any other person, than the sum of $3,230; that none of said $3,230 was the property of the plaintiff. (5) That the board of county commissioners, sitting as a board of equalization, on the 11th day of August, 1887, placed, or ordered to be placed, on said assessment roll, an assessment against plaintiff of $18,-000, for personal property; that no notice of said entry, or of

intention to place the same upon the assessment roll, was ever given to plaintiff or her said agents, except that the delinquent list of taxes was published, wherein it was advertised that the lands in section 1 hereof were advertised for sale for personal taxes. (6) That at the time this action was begun the defend·· ant Kiser was about to sell said lands for said unpaid personal tax."

Conclusions of law: "(1) That the action of the board of county commissioners, in placing the said assessment upon the roll without notice to the plaintiff or her agents, was irregular and illegal. (2) That the said assessment is null and void, and said plaintiff is entitled to have the same set aside. (3) That the county treasurer has no authority to sell plaintiff's land or to advertise the same, and plaintiff is entitled to have him restrained from selling the same. (4) That plaintiff is entitled to a judgment in accordance with the above. To each of which conclusions of law the plaintiff, at the proper time, excepted."

Defendants rely, in their assignments of error, upon the following: That the findings of fact do not sustain the conclusions of law, and that the court erred in declaring said assessment void, and that the county treasurer had no authority to advertise and sell the same for the personal taxes of the plaintiff for the year 1887, and in not rendering a judgment for the defendants for taxes upon personal property found to be of the value of $6,000.

The following questions are presented by the record: First, could the personal property in question be lawfully listed and assessed in Spink county, S. D., while the owner was a resident of the state of Wisconsin? Second, had the board of equalization authority to place such property upon the assessment roll without giving notice of such action to plaintiff or to her agent? The first question is of no importance, if the second is determined in favor of the plaintiff; and we will therefore proceed to consider and determine whether the action of the board of equalization was void because no

notice of the action of which plaintiff complains was given.

Our statute requires all credits, whether money, property, or labor due from solvent debtors on contract or in judgment, to be subjected to taxation, and it requires every inhabitant of this state, of full age and of sound mind, upon the application of the assessor to list all property subject to taxation in this state, of which he is the owner or has the control and manage· ment; and if he fail or refuse so to do, and no assessment of such property has been made at the time the assessment rolls are returned and presented to the board of equalization for its action thereon, the law makes it the duty of such board, at its annual meeting, and at the time and place fixed by law, to place upon and add to such assessment roll any property, personal or real, that is subject to tax ation, and which has been omitted by the assessor or owner, and to enter for the same a reasonable, just, and uni form taxation. During the sessions of such board, any person, or his agent or attorney, has the right, under express pro visions of the law, to apply to the board for the correction of any alleged errors in the listing or valuation of his property, whether real or personal, and the board may correct the same as shall be reasonable and just. Comp. Laws, §§ 1547, 1554, 1585. Section 1584 gives the board of equalization power to change the valuation and assessment of any property, real or personal, upon the assessment roll, by increasing or diminish ing the assessed valuation thereof, for the purpoose of equaliz ing and correcting the same so that it shall be just and uniform, provided the aggregate assessment shall not be changed thereby. Although the question of notice was not directly in volved in the case of Avant v. Flynn, (S. D.) 49 N. W. 15, it was observed in that decision that no addition to the assess ment roll made by the board of equalization without notice to the owner would be valid. In that case the property, consist ing of cattle, had been listed by the owners, and was raised by the board from 235 to 400 head, and the value increased from

$2,350 to $6,440.   From the opinion in that case, we quote the following:  "In the case at bar, if the facts had shown that the appellants' assessments were raised without notice, we should have further considered their contention on that point; but upon examination of the record we find that, at the time of the action of the board of equalization in raising their assessment, they were present, and protested against such action, * * *   The objection to the statute creating a board of equalization and defining its duties, in that it provides no notice to the taxpayer of the intention to raise or alter his assessment, has no application or force to the case at bar, because, at the time the raise was made, the appellants enjoyed all the rights and privileges they could have had if a formal notice had been served upon them."   The distinction to be observed between that case and the one under consideration is that in the former the owners had listed their property, and the assessor had placed the same upon the assessment roll;  and in such a case the owner has a right to presume that he has done all the statute requires of him, and that no change will be made that will increase his burden without notice or opportunity to be heard as to the justice and equity of the contemplated action of the board in relation thereto.   In the case before us the name of the plaintiff did not appear upon the list of personal property, and no personal property had been assessed to her for that year.   Her personal property was in the hands of her resident agents, and, if it were a proper subject of taxation, it was the duty of the plaintiff, by herself or agents, to list the same for taxation; and, failing in that particular, she is charged with presumptive knowledge that the board of equalization, at its annual meeting, and at the time and place fixed by law, would place such property upon the assessment roll, and enter therefore a just, reasonable, and uniform taxation.   And, if she desired to have a hearing at that time, it was her duty to be present in person, or by her agents or attorneys; and, if she failed to avail herself of the privilege provided by statute, it is

reasonable to presume that she concluded to leave the matter to the board, in case it should be discovered that she had personal property subject to taxation which had not been listed for the year 1887. In this particular the case before us is clearly distinguishable from Avant v. Flynn, supra. Under a statute in effect the same as ours, with the exception that notice to the owner shall be given before any board of equalization can increase the valuation of any property that has been assessed, the supreme court of Oregon uniformly holds that the board may place upon the assessment roll property of the taxpayer which has been omitted by the assessor or owner, and that no notice, in such case, is necessary. Hill's Ann. Laws Or. § 2780; Bank v. Jordan, (Or.) 17 Pac. 621; Ramp v. Marion Co., (Or.) 33 Pac. 681. The proposition that the board of equalization, in placing omitted property upon the assessment roll, acts only as an assessing board, is so apparent and well settled that supporting authorities are unnecessary; and it is therefore evident that such board, without notice to the owner, could place his property upon the assessment roll, and enter taxation therefor, provided the assessor would be justified in so doing.

In the case of Railway Co. v. Johnson, 108 Ill. 11, the court, speaking through Chief Justice SHELDON, says: "The point is made that the assessor had no authority to list and assess this omitted property without notice to the railroad company; and Cleghorn v. Postlewait, 43 Ill. 428; McConkey v. Smith, 73 Ill. 313; and Bank v. Cook, 77 Ill. 622, are referred to as sustaining the position. Those cases are only to the effect that when a person furnishes the assessor with a list and valuation of his property, which is accepted by the assessor without question, the assessor has no power afterwards to alter the same without first giving the party assessed notice. But we know of no authority for the position that, if an assessor discovers other property than that listed, he must give the owner notice before he can list and assess it." In Bank v. Jor-

dan, (Or.) 17 Pac. 621, the court, referring to Section 2779, Hill's Code Or., said: "This language was evidently designed to confer upon the board power to make the necessary corrections, by assessing the property where it had not been assessed, and this power has been constantly exercised by boards of equalization throughout this state. The power conferred by this section is clearly distinguishable from that conferred by Section 2780, which gives the board power to 'increase the value of any property so assessed upon three days' notice.' In one case, if property is omitted from the roll, it may be placed there, and a proper valuation placed upon it, and this without notice. In the other, the property being found upon the roll, and valued by the assessor, the valuation cannot be changed or disturbed without the requisite notice." In the case of Ramp v. Marion So., *supra*, the court says: "The plaintiff was chargeable with knowledge that the note and other property owned by her in Marion county was liable to assessment and taxation in the county, and that if she did not see that it was listed by the assessor, and properly valued, the law authorizes and empowers the board of equalization to add it to the assessment roll, and place a valuation thereon; and it was her duty if she desired to be heard either on the question of its valuation or as to her right to a deduction for indebtedness, to have appeared before the board at the time and place specified in the notice of its meeting, and submitted the matter to it for consideration." It will be observed that the statute of Oregon differs from ours, in that the board of equalization is not required to meet at a time and place fixed by law, and a notice of the time and place of holding such meeting is therefore necessary, in addition to the notice required to be given to the owner of the property assessed, in case an increase in valuation is contemplated by the board of equalization. To hold that owners of property can avoid the payment of a just and uniform rate of taxation by avoiding the assessor, or by neglecting to list their taxable property, would violate the spirit, if not the letter of

our statute, which creates a board of equalization, defines its duties, and fixes the time and place of its meeting. Owners of such property are charged with a knowledge of the law, and are presumed to know that the meeting will be held at the time and place appointed by statute.

From a careful examination of the subject, we are led to believe that the action of an assessor in listing and assessing taxable property without notice to the owner would not, alone, invalidate the tax; and we also conclude that the Spink county board of equalization, in placing plaintiff's property upon the assessment roll, and entering a taxation for the same, was acting merely as an assessing board, and any irregularity which did not go to the ground work of the tax would not prevent the recovery of the just and true amount of tax, if any, found due upon the trial of the cause, as provided by Section 1643 of the Compiled Laws of the state. Both the assessor and the board of equalization act in a judicial capacity, and are required to perform their duties within a time fixed by law. If it were necessary to ascertain the whereabouts of every absent property owner, and give him notice of an intended assessment, valuable interests would often escape taxation, and residents as well as nonresidents might engage their capital in lucrative business, and receive the advantages and protection of our laws without bearing any of the burdens of taxation. Unless the property of an absent owner be listed by another, the statute makes it the duty of the assessor to ascertain and estimate the value of such property, and to assess the same in his, her or their name, provided such name be known to him or is ascertainable; and, in case such property be omitted, it is made the express duty of the board of equalization to place the same upon, and add it to, the assessment roll, and enter therefor a reasonable, just and uniform taxation. Comp. Laws, §§ 1548, 1585.

Entertaining the belief that the failure to notify the plaintiff or her agents was not sufficient to render the action of the

board of equalization nugatory, or the assessment void, we will consider whether the personal property in question, under the circumstances before us, could be lawfully assessed in Spink county, at a time when the plaintiff and owner thereof was not a resident of said county or state. The court found as a matter of fact, that Billinghurst Bros. were the sons and agents of plaintiff, and were engaged in loaning and investing her money in Spink county, where they resided, and where at least $6,000 of such money was employed by them for her in said business, at the time the same was assessed by the board of equalization, and for several months prior thereto. There is nothing in the complaint, nor in any manner before us, to indicate that the plaintiff paid taxes upon the personal property in question in the state of Wisconsin; and one of her agents in Spink county, having full power to represent her in all business transactions affecting such property, returned to the assessor that, as the agents of plaintiff, neither himself nor brother had any personal property under their control, belonging to her, that was required by law to be listed for the year 1887. We therefore conclude that the money and credits so employed will escape assessment, unless it is by law subject to taxation in Spink county for that year. If the money and bills receivable, amounting to $6,000, and belonging to the plaintiff, had been the property of her agents, they would have been required to list the same in Spink county, as they were residents thereof. And, when an agent is required to list the property of his principal, the law makes it his duty to list the same for taxation where he should have listed it if it were his own; and, when a person is doing business in more than one county, our statute requires him to list such property and credits as he may have in the county where the same is engaged, without reference to his place of residence. Comp. Laws, §§ 1559, 1560. From Reno on Nonresidents, (Chapter 11,) we quote the following: "The general rule is that a nonresident who makes an investment in a state of the union holds it subject to all the laws of that

state, both present and prospective. His property may there-fore be taxed by the state, it may be subject to attachment and execution in accordance with its laws, his title may be divested under the statute of limitatiors of the state in which his property is situated, and in other ways his property rights may be affected by state action.'' While the above rule has no application to property only temporarily within such state, or in transitu, it will be observed, however, that no distinction is made between personal and real property. We are disposed to hold that the situs of personal property owned by a nonresident, but employed in business in this state, and under the control and management of an agent, is at the residence of such agent for the purpose of taxation. In our opinion, a fair interpretation of our statute supports the position, and any other view would render the statute ineffectual to accomplish the purpose for which it was enacted; and in no event could personal property belonging to a nonresident, but kept in this state for the purposes of investment and profit, in the manner adopted by the plaintiff, become subject to taxation in this state. From the provisions of our statute, it appears to us that our legislature intended to render all personal property taxable in the county where it is kept and employed in business, and it therefore follows that such property may have a situs different from, and independent of, the residence of the owner; and, where such property is under the management and control of an agent, it becomes the duty of such agent to list such property either in his name or the name of his principal, and it is made the duty of the assessor or the board of equalization so to do in case he fail in that particular.

There is nothing to indicate that plaintiff's money or notes were not at all times in the hands of her agents whom she had authorized to loan or invest the same in Spink county; but counsel's contention is that, as she was a nonresident, such property could only be taxed at the place of her residence,

where, in law, her personal property is deemed at all times to be.    While it is true that the domicile of the owner is the place where, by a legal fiction, personal property is regarded as having its situs, it is equally evident that money belonging to a nonresident, in the hands of a resident agent authorized to use the same in the loan and investment business, is taxable where the agent resides, and where such property is employed, and there is no distinction between money and other species of personal property.    1 Desty, Tax'n, 324. Hutchinson v. Board of Equalization, (Iowa) 23 N. W. 249; McCutchen v. Rice County, 7 Fed. 558; Cooley, Tax'n, 373; Curtis v. Ward, 58 Mo. 295; Walton v. Westwood, 73 Ill. 125; Jefferson's Ex'rs v. Washington County, (Minn.) 28 N. W. 256.    A nonresident who sends money into this state, and surrenders its possession and control to agents fully authorized to loan, invest, and manage the same, thereby subjects such property to the jurisdiction of this state, for the purposes of taxation; and the fiction as to the situs of the property yields to the requirements of justice, and the actual situs is the place where the property is actually situated.    Plaintiff's money employed in Spink county is protected by the laws of this state, and, while it is so engaged, she cannot avoid the payment of taxes in accordance with the provisions of our statute. ˙ The trial court found that respondent had personal property in the county of Spink amounting to $6,000, which, in our opinion, was assessable and taxable in said county for the year 1887.    Section 1643, Comp. Laws, provides that: "Whenever any action or proceedings shall be commenced and maintained before any court or judge to prevent or restrain the collection of any tax or part thereof, or any particular act of an officer in the collection thereof, or to recover any such tax before paid, or to recover the possession or title of any property real or personal sold for taxes, or to invalidate or cancel any deed or grant thereof for taxes, or to restrain, prevent, recover or delay any payment of taxes, the true and just amount of taxes due upon such property or by such person must be as-

certained, and judgment must be rendered and given therefor against the taxpayer, and if the tax be delinquent execution must issue forthwith for the same." It is therefore ordered that the cause be remanded to the circuit court, with directions to ascertain, by reference or otherwise, the true and just amount of taxes due upon such property for said year, and render and enter judgment therefor against the respondent. Subject to this modification and direction, the decision of the circuit court is affirmed. Each party to pay its own costs in this court, except the clerk's costs, which shall be paid by the appellants.